Scott A. Lucas
Law Offices of Scott A. Lucas
250 Park Avenue
20th Floor
New York, New York 10177
(212) 983-6000
*Attorneys for Plaintiff*

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 0 5 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 11 - 3804

-----------------------------------------------------X

RUZDIJA RADONCIC,

                                    Plaintiff,                    **COMPLAINT**

                    -against-

EFTHIMIOS ZISIMOPOULOS a/k/a                          **SUMMONS ISSUED**
TIM ZISS, ALLIED PROPERTIES LLC,
and AXION MANAGEMENT LLC,
                                                                          COGAN, J.
                                    Defendants.

-----------------------------------------------------X

Plaintiff Ruzdija Radoncic ("Plaintiff"), by his attorneys, the Law

Offices of Scott A. Lucas, alleges as follows for his Complaint against Defendants

Efthimios Zisimopoulos a/k/a Tim Ziss, Allied Properties, LLC and Axion

Management, LLC (collectively, "Defendants"):

## INTRODUCTION

1.    Plaintiff brings this action against Defendants for unpaid

overtime and liquidated damages under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, *et seq.* and New York Labor Law ("NYLL") § 663.1 and § 142-2.2

of Title 12 of New York's Codes, Rules and Regulations ("NYCRR"); for

unlawful deductions in violation of NYLL § 193; and for untimely wage payments

in violation of NYLL § 191.1(a).

## JURISDICTION & VENUE

2.     This Court has subject matter jurisdiction over Plaintiff's

federal claims pursuant to 28 U.S.C. §§1331 and 1337, and 29 U.S.C. § 216(b).

3.     This Court has supplemental jurisdiction over Plaintiff's claims

under state and local law pursuant to 28 U.S.C. § 1367.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

5.     Plaintiff Ruzdija Radoncic is a resident of the State of New

York, County of Queens.

6.     Defendant Efthimios Zisimopoulos a/k/a Tim Ziss (hereafter,

"Ziss") is an individual who, upon information and belief, resides in the County of

Nassau.

7.     Upon information and belief, Defendant Allied Properties, LLC

is a domestic limited liability company with its principal place of business at 9322

2

Third Avenue, Suite 502, Brooklyn, NY 11209.

8.    Upon information and belief, Defendant Axion Management, LLC is a domestic limited liability company with its principal place of business at 9322 Third Avenue, Suite 502, Brooklyn, NY 11209.

**Defendants' Status As Joint Employers**

9.    At all material times herein, Plaintiff was employed by an entity or entities described variously as Allied Properties, LLC and Axion Management, LLC (collectively, the "Company").

10.    Upon information and belief, at all material times herein the Company was engaged in, *inter alia*, building management.

11.    Upon information and belief, at all material times herein Ziss was an owner of the Company.

12.    Upon information and belief, at all material times herein Ziss was the Company's principal executive officer.

13.    At all material times herein, Ziss exercised significant managerial control over employees of the Company, including, without limitation, hiring, firing, setting pay rates, and, upon information and belief, formulating

3

business and marketing strategy and maintaining employment and compensation records.

14.    At all material times herein Ziss had the power to determine and change the Company's hiring decisions, work schedules, work assignments and employee compensation practices.

15.    Ziss directed, authorized, condoned, acquiesced in, cooperated with and facilitated the Company's practice of not paying any overtime to Plaintiff and of violating the rights of certain other Company employees.

16.    At all material times herein Ziss was an agent of the Company, and, in doing the things alleged in this Complaint, was acting within the course and scope of such agency.

17.    Upon information and belief, at all material times herein Defendants were joint employers of Plaintiff.

18.    Upon information and belief, Ziss frequently used and authorized and condoned the use of multiple, inconsistent names to describe the entity that was Plaintiff's nominal employer.

19.    As a result, confusion ensued (and continues to exist) with respect to the true identity of Plaintiff's nominal employer.

4

20.    Accordingly, Ziss, at all material times herein, has acted as an agent for an undisclosed, partially disclosed or improperly disclosed principal.

**Defendants' Employment of Plaintiff**

21.    On or about February 2, 2009 Ziss hired Plaintiff to work as an employee.

22.    Plaintiff was hired to work for the Company as a handyman/superintendent/superintendent in a 127-unit building located at 8-15 27th Avenue in Astoria, New York (the "Building").

23.    Plaintiff's principal duty was to respond to minor maintenance and service requests at the Building, e.g., fixing plumbing problems, changing electrical plugs and door knobs, etc.

24.    Plaintiff was also required to make repairs and renovations to several of the apartments in the Building, including the one he occupied.

25.    Plaintiff was hired to work an ostensible 40-hour work week in exchange for gross wages of $730.77 per week.

26.    As part of Plaintiff's employment compensation, Plaintiff was provided with an apartment fairly valued by Defendant at $2,175.08 per month.

5

*See* Ex. "A" hereto, rental receipt provided by Defendant (through Wavecrest Management) to Plaintiff identifying the value of the apartment occupied by Plaintiff.

27.    As part of Plaintiff's employment compensation, Plaintiff was also provided with a weekly utility allowance of $25.

28.    Plaintiff's ostensible work schedule was Monday through Friday, from 7 a.m. to 4 p.m., with a one-hour lunch break.

29.    Despite the ostensible 40-hour work week, Plaintiff, at all material times herein, worked well in excess of 40 hours per week.

30.    Plaintiff was instructed to fax to the Company a weekly breakdown of the hours he worked performing his handyman/superintendent/superintendent/superintendent duties and in performing most of his renovation duties.

31.    Plaintiff generally did so after each work week.

32.    In addition, Defendants were aware that Plaintiff was performing after hours renovation work on the apartment he occupied since Ziss was the person who instructed him to make such renovations despite the heavy demands of Plaintiff's regular work load.

6

33. Although Defendant instructed Plaintiff to renovate the apartment he occupied, Defendants did not instruct Plaintiff to include the time he spent performing after hours renovation on that apartment. Accordingly, Plaintiff did not include that time in his weekly estimates.

34. The amount of overtime worked by Plaintiff usually varied somewhat from week to week, but averaged about 22.5 hours per week from February 2, 2009 to May 5, 2011.

35. Plaintiff was never paid anything for any of his overtime work, *i.e.*, Plaintiff never received overtime pay or straight pay for his overtime work.

36. Based on the incomplete time-keeping records available to him at this time and his own memory, Plaintiff reasonably estimates that he worked approximately 2,058 hours of overtime during his employment with Defendants.

37. There was never any agreement between Plaintiff and Defendants to compensate Plaintiff for overtime work.

38. Plaintiff was not an exempt employee.

**Determining Plaintiff's Regular Rate of Pay**

39. The FLSA deems the regular rate of pay to include "all

7

remuneration for employment paid to, or on behalf of, the employee". 29 U.S.C. § 207(e).

40.    "[T]here is a statutory presumption [under the FLSA] that remuneration in any form is included in the regular rate calculation." *Madison v. Resources for Human Development, Inc.*, 233 F.3d 175, 187 (3d Cir. 2000).

41.    When Ziss interviewed Plaintiff for the job, he expressly represented to Plaintiff that the apartment was part of Plaintiff's employment compensation.

42.    Since "the reasonable cost or fair value of all meals and lodging provided by an employer must be added to the cash wages when calculating an employee's regular rate," *Moon v. Kwon*, 248 F.Supp.2d 201, 230 (S.D.N.Y. 2002) (Lynch, J.), Plaintiff's regular rate of pay necessarily includes the value of the apartment and the weekly utility allowance.

43.    Accordingly, Plaintiff's regular rate of pay was $30.96 per hour factoring in the value of the apartment and utility allowance.

## FIRST CAUSE OF ACTION

## UNPAID OVERTIME IN VIOLATION OF THE FLSA

44.    Plaintiff incorporates paragraphs 1 - 43 by reference as if fully set forth herein.

45.    Upon information and belief, Defendants constitute an "enterprise" as that term is defined by 29 U.S.C. § 203(r), in that, at all material times herein, they engaged in related activities performed through unified operation and/or common control for a common business purpose (i.e., to make money).

46.    At all times mentioned herein, Defendants' employees regularly engaged in interstate commerce in connection with their employment, including, but not limited to:  **(a)** interstate purchases of building supplies and materials used in connection with real estate management, maintenance and renovation, and the operation of an office; **(b)** handling transactions that involve the interstate banking, finance and insurance systems; and **(c)** transacting business across state lines via interstate telephone calls, emails, faxes, courier deliveries, and the U.S. Mail.

47.    At all times mentioned herein, Defendants employed employees in and about their business premises in handling, buying, or otherwise working on goods and materials, including, but not limited to, trademarked cleaning materials,

9

building supplies and other materials used in connection with real estate management, maintenance and renovation, and the operation of an office, and the transmission of electronic files and other materials which had moved in or been produced for commerce by other persons.

48.    All times mentioned herein the annual dollar volume of business of Defendants was $500,000 or more, and Defendants had at least two employees engaged in commerce.

49.    At all times mentioned herein, Defendants failed to comply with the FLSA, in that Defendants frequently required and permitted Plaintiff to work more than 40 hours per week, but provision was not made by Defendants to pay Plaintiff at the rate of one and one-half times the regular rate for the hours worked in excess of the hours provided for in the FLSA (29 U.S.C. § 207).

50.    Defendants are and were at all relevant times herein aware that overtime pay is mandatory for non-exempt employees who work more than 40 hours per week.

51.    Defendants are and were at all material times herein fully aware that Plaintiff usually worked more than 40 hours per week without receiving overtime compensation for any of that additional work.

52.    No agreement existed between the parties with respect to the payment of overtime for hours worked in excess of 40 in a workweek.

53.    Accordingly, Defendants are liable for unpaid overtime and liquidated damages in an amount estimated to be not less than $191,148, together with attorney's fees.

## SECOND CAUSE OF ACTION

## UNPAID OVERTIME 12 NYCRR § 142-2.2 AND NYLL § 663(1)

54.    The allegations of paragraphs 1 – 53 of the Complaint are incorporated herein by reference.

55.    Defendants failed to comply with, *inter alia*, NYLL § 663.1 and § 142-2.2 of Title 12 of the Compilation of Codes Rules & Regulations of the State of New York ("NYCRR"), in that Plaintiff often worked for Defendants in excess of the maximum hours provided by law, but provision was not made by Defendants to pay Plaintiff at the rate of 1½ times the regular rate for the hours worked in excess of the maximum hours provided by law.

56.    Based upon the foregoing, Defendants, for violating NYLL § 663.1 and 12 NYCRR § 142-2.2, are liable for unpaid overtime as set forth below, plus statutory attorney's fees and costs.

11

**25% "penalty" under NYLL § 663.1**

57.    Defendants' non-payment of overtime pay to Plaintiff was willful.

58.    Defendants' willfulness may be inferred from several sources, including, without limitation, the fact that:  **(a)** when Plaintiff interviewed for the job, Ziss lied to Plaintiff about the compensation and benefits he would receive; **(b)** Defendants received weekly breakdowns of most of Plaintiff's work hours showing work in excess of 40 hours per week, but consistently failed to pay overtime without giving Plaintiff any valid excuse for such failure; **(c)** when Plaintiff complained to Ziss about his having had to advance the cost for the materials to renovate the apartment he occupied, Ziss cut him off, saying, in words or substance, "*I don't want to hear about that.  You're getting a free apartment.*"; **(d)** Ziss urged Plaintiff to engage in other labor law violations in an effort to prevent unionized workers from working in the Building, *i.e.*, asking Plaintiff to carry out Ziss's alleged decision to fire porters who were in a union even though they performed their jobs well; and **(e)** Ziss, upon information and belief, kept the Company thinly capitalized and changed its name from "Axion" to "Allied" to reduce the likelihood of ever having to pay a judgment.

59.     Under the version of NYLL § 663.1 in effect until November 24, 2009, a Defendant who willfully failed to pay overtime due and owing is liable for the payment of an additional sum equal to 25% of all unpaid overtime.

60.     "[A]n award of liquidated damages under New York law is punitive in nature[.]" *Vasquez v. Ranieri Cheese Corp.*, 2010 WL 1223606, *18 (E.D.N.Y. 2010). Thus, "[i]n contrast to federal liquidated damages under the Fair Labor Standards Act, which serve a compensatory function, liquidated damages under the [New York] Labor Law constitute a penalty to deter an employer's willful withholding of wages due." *Ling Nan Zheng v. Liberty Apparel Co., Inc.*, 2009 WL 1383488, *1 (S.D.N.Y. 2009), citing, *inter alia*, *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999).

61.     Defendants' deliberate failure and refusal to pay wages due was "willful" under the version of NYLL § 663.1 in effect between February 2, 2009 and November 24, 2009.

62.     Accordingly, for consistently and willfully violating the above-referenced New York State laws and regulations, Defendants, in addition to their liability for unpaid overtime and compensatory liquidated damages under federal law, are liable for the payment of a statutory penalty under NYLL § 663.1 equal to 25% of all of Plaintiff's unpaid overtime between February 2, 2009 and November

13

24, 2009, estimated to be not less than $5,947, together with reasonable attorney's fees and costs.

## THIRD CAUSE OF ACTION

## UNTIMELY PAY IN VIOLATION OF NYLL § 191.1(a)

63.    Plaintiff incorporates paragraphs 1- 62 by reference as if fully set forth herein.

64.    NYLL § 191.1(a) is a substantive provision of NYLL article 6 which requires that manual workers be paid "weekly and not later than seven calendar days after the end of the week in which the wages are earned[.]"

65.    Plaintiff is a manual worker.

66.    Although Defendants agreed to pay Plaintiff once a week, and caused Plaintiff's paychecks to be issued once a week, Defendants often failed to pay Plaintiff on a weekly basis because the funds were often not in the account on which the check was drawn.

67.    To obtain his pay in a timely manner, Plaintiff, on roughly 25 occasions, had to go to a check cashing store, which involved the payment of a $15 fee.

14

68.    Eventually the check cashing store refused to cash the paychecks issued by Defendants.

69.    Thereafter, Plaintiff was required about 50% of the time to wait until sometime after the paycheck was issued to deposit it because the funds were not in the account.

70.    In addition, on several occasions Plaintiff's paycheck was dishonored, and Plaintiff had to obtain a reissued check and redeposit it before getting paid.

71.    Upon information and belief, Ziss is a wealthy man who deliberately keeps his Company under-capitalized in order to hinder creditors and dissuade potential plaintiffs such as Plaintiff from pursuing their remedies.

72.    The untimely payment of Plaintiff's wages was, at all material times herein:  **(a)** willful; **(b)** not the result of a good faith belief by Defendants that their untimely payment of Plaintiff's wages was in compliance with the law; and **(c)** fully consistent with Defendants' disregard of other labor law obligations, including those referenced herein.

15

73.     Under NYLL §§ § 191.1(a) and 198.1-a, Plaintiff is entitled to liquidated damages equal to not less than $10,048, or 25% of the wages that were not timely paid, together with costs and reasonable attorney's fees.

## FOURTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS IN VIOLATION OF NYLL § 193

74.     The allegations of paragraphs 1 – 73 of the Complaint are incorporated herein by reference.

75.     Labor Law § 193 is a substantive provision of Labor Law article 6 which prohibits employers from making deductions from an employee's wages, except under limited circumstances not applicable here.

76.     Ziss instructed Plaintiff to renovate several apartments, including the apartment that was provided to him for occupancy.

77.     With respect to the apartment provided to Plaintiff for occupancy, Ziss instructed Plaintiff to use his own credit card for any purchases made in connection with the renovation, and told Plaintiff that he would be reimbursed after submitting copies of the receipts for the expenses incurred in connection with the renovation.

78.    Relying on Ziss's assurances, Plaintiff incurred not less than $3,711 in expenses in connection with the renovation of the apartment that he occupied.

79.    When Plaintiff raised the issue of the agreed-upon reimbursement for having advanced the cost of materials for renovation of the apartment he occupied, the Company's then-manager told him that the Company was (allegedly) having cash flow problems and that Plaintiff would only receive reimbursement for one-half of the cost of the expenses incurred.

80.    When Plaintiff raised the issue with Ziss, Ziss cut him off, saying, in words or substance, "*I don't want to hear about that.  You're getting a free apartment.*"

81.    Despite Defendants' promise to reimburse Plaintiff for such expenses, Plaintiff never received reimbursement for any of the expenses he incurred in renovating the apartment he was occupying.

82.    Defendants' failure to reimburse Plaintiff for the expenses that Defendants directed him to incur constitutes an indirect wage deduction under NYLL § 193, which prohibits employers from making constructive deductions to employee's wages.

17

83.    As an "employee" (Labor Law § 190.1) whose "wages" (Labor Law § 190.1) have been unlawfully withheld by his "employer" (Labor Law § 190.3), Plaintiff is entitled to reimbursement of wages in an amount not less than $3,711.

84.    These indirect deductions from Plaintiff's wages were, at all material times herein:  **(a)** willful; **(b)** not the result of a good faith belief by Defendants that they were in compliance with the law; and **(c)** fully consistent with Defendants' disregard of other labor law obligations, including those referenced herein.

85.    Under NYLL §§ § 191.1(a) and 198.1-a, Plaintiff is entitled to recover the above-referenced unlawful deductions, together with liquidated damages equal to not less than 25% of the above-referenced unlawful deductions, which, together, are estimated to be not less than $5,108, costs and reasonable attorney's fees.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests a judgment as follows, or in such other amount as is determined at trial:

18

| | | |
|---|---|---|
| | $95,574 | FLSA Unpaid Overtime |
| | $95,574 | Compensatory Liquidated Damages for FLSA Overtime Claim |
| | $95,574 | NYCRR/NYLL Unpaid Overtime |
| | $5,947 | 25% Penalty for NYCRR/NYLL Overtime Claim |
| | $10,048 | 25% Penalty for NYLL Untimely Payment Claim (applied solely to Plaintiff's base, i.e., non-overtime, pay) |
| | $5,108 | NYLL Unlawful Deduction Claim, Plus 25% Penalty |
| **Subtotal** | **$307,825** | |
| **Potential Offset for Duplicative Portion of Claims** | ($95,574) | Subtract $95,574 for NYCRR/NYLL unpaid overtime, which is encompassed by FLSA overtime claim |
| | $212,251 | **Total (not including Attorney's Fees and Interest)** |

Plaintiff also respectfully requests statutorily-mandated attorney's fees, costs, interest, disbursements and such other and further relief as may be appropriate on all causes of action.

Dated:     New York, New York
           August 5, 2011

LAW OFFICES OF SCOTT A. LUCAS

By: _____

Scott A. Lucas (SL-6316)
250 Park Avenue
20th Floor
New York, New York 10177
(212) 983-6000
*Attorneys for Plaintiff Ruzdija Radoncic*

19

**The Wavecrest Management Team, Ltd.**
87-14 116th Street
Richmond Hill, New York 11418

| DATE | 3/01/11 |
|---|---|
| AMOUNT DUE | -213.08 |
| ACCOUNT NO. | 606-036 |

MAKE CHECK
PAYABLE TO   **REALTY EQTY HOLDINGS 3820**

PLEASE ATTACH ALL PAYMENTS WITH THIS STATEMENT

D E T A C H   H E R E

The Wavecrest Management Team, Ltd.
87-14 116th St Richmond Hill, New York 11418

**Keep This Part For Your Records**

| Account Number | Includes Payments Received As Of |
|---|---|
| 606-036 | 2/22/11 |

| ITEM | AMOUNT |
|---|---|
| BASE CHG | 1962.00 |
| EMPLOYEE ALL | -1962.00 |
| FUEL AR | -213.08 |

| Please Return Payment To: |
|---|
| WAVECREST MANAGEMENT -606
P.O. BOX 5626
HICKSVILLE, NY 11802-5626 |

| Name |
|---|
| 606-036
RUZDIJA RADONCIC
APT. 122
8-15 27TH AVENUE
ASTORIA, NY     11102 |

1501382716 0056260 060600368 000000001 031152

| DATE DUE | AMOUNT DUE |
|---|---|
| 3/01/11 | -213.08 |

---

**The Wavecrest Management Team, Ltd.**
87-14 116th Street
Richmond Hill, New York 11418

| DATE | 7/01/11 |
|---|---|
| AMOUNT DUE | -213.08 |
| ACCOUNT NO. | 606-036 |

MAKE CHECK
PAYABLE TO   **REALTY EQTY HOLDINGS 3820**

PLEASE ATTACH ALL PAYMENTS WITH THIS STATEMENT

D E T A C H   H E R E

The Wavecrest Management Team, Ltd.
87-14 116th St Richmond Hill, New York 11418

**Keep This Part For Your Records**

| Account Number | Includes Payments Received As Of |
|---|---|
| 606-036 | 6/22/11 |

| ITEM | AMOUNT |
|---|---|
| BASE CHG | 1962.00 |
| EMPLOYEE ALL | -1962.00 |
| FUEL AR | -213.08 |

| Please Return Payment To: |
|---|
| WAVECREST MANAGEMENT -606
P.O. BOX 5626
HICKSVILLE, NY 11802-5626 |

| Name |
|---|
| 606-036
RUZDIJA RADONCIC
APT. 122
8-15 27TH AVENUE
ASTORIA, NY     11102 |

1501382716 0056260 060600368 000000001 071111

| DATE DUE | AMOUNT DUE |
|---|---|
| 7/01/11 | -213.08 |